UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CLARK EQUIPMENT COMPANY,<br><br>                    Plaintiff,<br>     v.<br><br>CHRISTOPHER WALLS,<br><br>                    Defendant. | CASE NO. 3:21-cv-05886-DGE<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION TO STRIKE (DKT. NO. 30) AND MOTION FOR CONTEMPT, SANCTIONS, AND MODIFICATION OF PERMANENT INJUNCTION (DKT. NO. 23) |

**I    INTRODUCTION**

Before the Court is Plaintiff's Motion for Contempt, Sanctions, and Modification of Permanent Injunction (Dkt. No. 23), and Plaintiff's Motion to Strike Defendant's Answer (Dkt. No. 30). Plaintiff's motions are premised on Defendants' failure to comply with a permanent injunction issued by this Court (Dkt. No. 20); as well as Defendants' untimely answer to Plaintiff's complaint (Dkt. No. 28). The Court presumes familiarity with the facts of this case. (*See* Dkt. Nos. 20 at 2–3; 25 at 1–2.)

## II  DISCUSSION

### A. Motion to Strike

Plaintiff moves to strike Defendants' answer, filed on June 19, 2023 by Defendant Christopher Walls "on behalf of himself and also of [Defendant] Bobcat Rentals." (Dkt. No. 28; Dkt. No. 30.) As an initial matter, the Court construes Mr. Walls' answer as filed solely on his own behalf, and not on behalf of Defendant Bobcat Rentals Co. While Mr. Walls may represent himself pro se, he may not, as a non-attorney, represent co-defendant Bobcat Rentals Co. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008).

The Court agrees with Plaintiff that Mr. Walls' answer must be stricken. Under Federal Rule of Civil Procedure 12(a)(1)(A)(i), a defendant must serve an answer "within 21 days after being served with the summons and complaint." This court has "'inherent power' to impose sanctions," including "striking an untimely answer," for violations of this rule. *State Compensation Ins. Fund v. Capen*, 2016 WL 9083270, at *2 (C.D. Cal. Dec. 16, 2016). Mr. Walls was served with the summons and complaint on January 18, 2022. (Dkt. No. 6.) His responsive pleading was due February 8, 2022. Yet Mr. Walls did not file an answer or any responsive pleading until June 19, 2023—over a year after the deadline and following the Court's order of default judgment. (Dkt. No. 28.) Accordingly, the Court strikes Mr. Walls' answer. *See Lake v. Fellner*, 2014 WL 664653, at *2 (D. Nev. Feb. 19, 2014) (striking an answer that was more than a year late and followed entry of default); *Capen*, 2016 WL 9083270, at *2 (striking an answer filed more than a year after service of the complaint).

The Court does not, however, strike Mr. Walls' accompanying declaration (Dkt. No. 29), which it construes as both a motion to vacate and an opposition to Plaintiff's motion for contempt, sanctions, and modification of permanent injunction. *See Caldwell v. Navy Fed.*

1  *Credit Union*, 2023 WL 3150074, at *1 (C.D. Cal. Feb. 3, 2023) ("Pro se pleadings are to be
2  liberally construed in the Ninth Circuit"). Indeed, Mr. Walls' declaration states that he "would
3  like to motion the Court to vacate this order" and that his "immediate concern is to get out of
4  federal court contempt waters ASAP." (Dkt. No. 29 at 2.)

5        The Court nonetheless denies Mr. Walls' attempt to vacate the Court's default judgment.
6  "[A] trial court has discretion to deny a Rule 60(b) motion to vacate a default judgment if" any
7  one of the following are true: "(1) the plaintiff would be prejudiced if the judgment is set aside,
8  (2) [the] defendant has no meritorious defense, or (3) the defendant's culpable conduct led to the
9  default." *In re Hammer*, 940 F.2d 524, 525–26 (9th Cir. 1991). As the third factor is satisfied,
10 the Court's analysis need not proceed further. *American Ass'n of Naturopathic Physicians v.*
11 *Hayhurts*, 227 F.3d 1104, 1108 (9th Cir. 2000). Mr. Walls' culpable conduct led to the Court's
12 default judgment, as he received both actual and constructive notice of the action yet failed to
13 answer. *See Direct Mail Specialists, Inc. v. Eclat Computerized Techs, Inc.*, 840 F.2d 685, 690
14 (9th Cir. 1988). Mr. Walls had actual notice of the litigation, as he personally responded to
15 Plaintiff's notice of intent to file for default and promised Plaintiff that it would have a
16 responsive pleading "soon." (Dkt. No. 30 at 9.) Moreover, Mr. Walls had constructive notice, as
17 he was properly served with the complaint and summons. *See Pena v. Seguros La Comercial,*
18 *S.A.*, 770 F.2d 811, 815 (9th Cir. 1985). The Court therefore denies Mr. Walls' motion to vacate.

19       Plaintiff requests that "the Court order Defendants to pay Plaintiff's attorneys' fees
20 incurred in connection with bringing [Plaintiff's motion to strike]." (Dkt. No. 30 at 10.) The
21 Court declines Plaintiff's request. While Mr. Walls' answer was untimely and has been stricken,
22 and while his motion to vacate was unsuccessful, the Court does not find that Defendant Walls'

deficient filing amounts to bad faith supporting an award of attorneys' fees to Plaintiff. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).

      **B.**      **Civil Contempt and Sanctions**

Plaintiffs ask "the Court [to] find Defendants in contempt for failure to comply with the Court's permanent injunction against Defendants' continued use of the BOBCAT Marks." (Dkt. No. 23 at 2.) Plaintiff therefore must "show[] by clear and convincing evidence that [Defendants] violated a specific and definite order of the court." *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (internal citation and quotation omitted). Defendants may avoid contempt by demonstrating an inability to comply with the order, *id.*, or substantial compliance with the order, *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir. 1989). "[W]here . . . the affidavits offered in support of a finding of civil contempt are uncontroverted," a district court need not hold an evidentiary hearing on the matter. *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1324 (9th Cir. 1998).

The Court finds contempt warranted. The Court's order is specific and definite: it requires Defendants to cease use of Plaintiff's BOBCAT Marks, as well as terms, names, symbols or devices that imitate the BOBCAT Marks; and it requires Defendants to cease offering services in conjunction with those marks. (Dkt. No. 20 at 10.) Defendants flagrantly violated this order through their continued use of signs and decals containing BOBCAT Marks; and their republication of their website, Bobcat Rentals Co. (Dkt. No. 23 at 3–4, 7–8.) The parties' affidavits are uncontroverted on the issue of noncompliance. While Mr. Walls expresses "concern" about "federal court contempt waters," his response does not point to any inability to comply or actions that would constitute substantial compliance with the Court's permanent injunction. (Dkt. No. 29 at 2–3.)

As Defendants have been found in contempt, the Court next addresses Plaintiff's argument for sanctions in the form of (1) an escalating fine in the event Defendants' noncompliance persists for two weeks following this Order and (2) an award of attorneys' fees and costs incurred by Plaintiff in investigating Defendants' contempt and bringing the instant motion. (Dkt. No. 23 at 12–14.) "Although the district court generally must impose the minimum sanction necessary to secure compliance . . . the district court retains the discretion to establish appropriate sanctions." *United States v. Bright*, 596 F.3d 683, 696 (9th Cir. 2010).

"[C]ourts have long imposed civil contempt sanctions" for the purpose of "'coerc[ing] the defendant into compliance' with an injunction or 'compensat[ing] the complainant for losses' stemming from the defendant's noncompliance with an injunction." *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1801 (2019). The sanctions requested by Plaintiff comport with these goals. *See United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999) (per diem fines may be used to coerce a party into compliance); *In re Dyer*, 322 F.3d 1178, 1195 (9th Cir. 2003) ("attorneys' fees are an appropriate component of a civil contempt award").

The Court therefore imposes a per diem fine of $500 for each day of noncompliance with the Court's July 29, 2022 order, to begin to accrue two weeks after entry of this Order. The Court declines, however, to find escalating fines necessary. Defendants may avoid the per diem fine by complying with the Court's July 29th Order within 14 days from the date of this Order. Additionally, Plaintiff is directed to submit any request for attorneys' fees and costs, including detailed billing records, for the Court's review within 14 days from the date of this Order.

C.      **Modification of Permanent Injunction**

Plaintiff asks this Court to modify the permanent injunction in its July 29, 2022 Order, in light of Defendants' continued violation of the Order and the refusal by third parties to stop

Defendants' infringing acts online.  (Dkt. No. 23 at 13.)  "A party requesting modification [of an injunction] must show 'a significant change [] in factual conditions.'" *America Unites for Kids v. Rousseau*, 985 F.3d 1075, 1097 (9th Cir. 2021) (internal citation omitted).  Importantly, a "substantial violation of a court order constitutes a significant change in factual circumstances." *Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir. 2016).  Defendants' blatant noncompliance with the Court's prior permanent injunction therefore provides sufficient basis for modification.

### 1. Third Parties

Plaintiff asks that the Court's permanent injunction be modified "to address third parties' refusal to cooperate." (Dkt. No. 23 at 13.)  Plaintiff explains that it "has made repeated attempts to enforce the Court's July 29 Order by requesting third parties [] take town Defendants' infringing [online] content and listings, but these third parties have been reluctant to act because the injunction presently only states that Defendants are enjoined from use of the BOBCAT Marks." (Dkt. No. 23 at 6.)  Specifically, Plaintiff highlights unsuccessful requests to (1) Google to remove Defendants' "Bobcat Rentals Co." listings from Google Maps and Google Search (*id.* at 6–7), (2) Yelp to remove Defendants' Yelp page; (3) website host Amazon Web Services to take down Defendants' website, bobcatrentalsco.com; and (4) website registrar, GoDaddy, to cancel or transfer Defendants' infringing domain name to Plaintiff (*id.* at 7).  Defendants seek a permanent injunction that would reach the conduct of these third parties.  (Dkt. No. 26 at 4–5.)

The Court requested and Plaintiff provided briefing on the authority under which the Court can "compel third parties, who are not party to the litigation and who have never been served, to assist in enforcing an injunction against Defendants." (Dkt. No. 25 at 4; Dkt. No. 26 at 2–5.)  The Court finds that a modified injunction may properly reach third parties who have contracted with Defendants to host or register the domain of Defendants' infringing website.

However, the injunction may not compel third parties such as Google and Yelp to act with respect to Defendants' use of the BOBCAT Marks.

At the outset, the Court observes that Plaintiff's proposed modified injunction does not actually name the third parties to be enjoined. Rather, it seeks to compel "Defendants, their officers, agents, representatives, employees, successors, and assigns, and all others in active concert or participation with them." (Dkt. No. 23 at 15.) This language aligns with Federal Rule of Civil Procedure 65(d)(2), which defines the persons—including third parties—who may be bound by an injunction, assuming those persons have actual notice of the order. Specifically, Rule 65(d)(2) allows an injunction to bind "the parties' officers, agents, servants, employees, and attorneys," as well as "other persons who are in active concert or participation with" the enjoined party.

Whether a third party can be bound by an injunction "because [it is] acting in concert with an enjoined party" is a "fact-sensitive inquiry." *Al Otro Lado v. Wolf*, 497 F. Supp. 3d 914, 929 (S.D. Cal. 2020). "The Supreme Court has interpreted this language to allow injunctions to bind . . . people . . . 'subject to [an enjoined party's] control.'" *California Chamber of Commerce v. Council for Education and Research on Toxins*, 29 F.4th 468, 483 (9th Cir. 2022) (quoting *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179 (1973)). The presence of a contractual relationship between a third party and an enjoined defendant may weigh in favor of finding that a third party is acting in concert or participation with the defendant, such that an injunction may reach the third party. *See Certified Nutraceuticals, Inc. v. Clorox Co.*, 2022 WL 2803118, at *5 (S.D. Cal. July 18, 2022). For instance, the Northern District of California found that an injunction reached third party domain name registries that contracted with the defendants to host or register the defendants' infringing website. *Chanel, Inc. v. Lin*, 2010 WL 2557503, at

*12 (N.D. Cal. May 7, 2010). The court expressly credited "arguments made in Chanel's supplemental brief" regarding the propriety of an injunction against third parties, *id*. at 12, which included argument that the contractual nature of the relationship between the defendants and domain registrars weighed in favor of finding the domain registrars to fall within the scope of Rule 65(d)(2), *Chanel, Inc. v. Lin*, Case No. 3:09-cv-04996, Dkt. No. 48 at 7–8 (C.D. Cal. 2010).

Moreover, other courts within the Ninth Circuit have found that an injunction may reach third party domain providers and website registries. *See, e.g., Amazon.com, Inc. v. Masseags*, Case No. C21-1456-BJR, 2022 WL 18356246, at *3 (W.D. Wash. Dec. 19, 2022) (ordering domain name registries and website hosts to disable "offending domain[s]" within seven days of notice of the order); *Gucci Am., Inc. v. Wang Huoqing*, 2011 WL 31191, at *15 (N.D. Cal. Jan. 3, 2011) (finding an order to transfer domain names to Plaintiffs to be "reasonable and necessary" even though it was "directed in part" to third parties). Accordingly, the Court concludes that the modified permanent injunction, set forth below, encompasses third parties with whom Defendants contracted to host or register "bobcatrentalco.com."[1]

However, the Court finds that third parties whose role is more passive with respect to infringing content online cannot reasonably be construed as "in active concert or participation" with Defendants under Rule 65(d)(2)(C), and certainly may not be deemed "agents" of Defendants under Rule 65(d)(2)(B). *See Simple Design Ltd. v. Dairy-Queen Vision*, 2023 WL

---

[1] The Court also requested supplemental briefing as to the Court's authority to order that Defendants' "bobcatrentalco.com" domain be transferred to Plaintiff, particularly since Plaintiff did not bring its case under 15 U.S.C. § 1125(d)(1)(A)—*i.e.*, the Anticybersquatting Consumer Protection Act ("ACPA")—which expressly permits a court to order the transfer of a domain name. The Court is persuaded that this remedy is nonetheless proper. *See Chanel, Inc.*, 2010 WL 2557503, at *12 (concluding that "while the transfer of domain names is expressly permitted in *in rem* actions for cyberpiracy under 15 U.S.C. § 1125(d), an *in rem* action is not the exclusive remedy for a plaintiff aggrieved by a trademark violation in cyberspace").

ORDER GRANTING IN PART PLAINTIFF'S MOTION TO STRIKE (DKT. NO. 30) AND MOTION FOR CONTEMPT, SANCTIONS, AND MODIFICATION OF PERMANENT INJUNCTION (DKT. NO. 23) - 8

2629153, at *7 (C.D. Cal. Jan. 10, 2023) (declining to enjoin online platforms on which a defendant's infringing mobile applications appeared); *Weitsman v. Levesque*, 2020 WL 6825687, at *18 (S.D. Cal. Nov. 20, 2020) (declining to order third party social media companies to "take action against Defendant should he fail to remove material in accordance with the injunction"). As Plaintiff has put forth no evidence to suggest active involvement by third parties Google and Yelp in Defendants' infringing conduct, the Court does not find an injunction as to these third parties appropriate.

### 2. Pierce County Sheriff's Office

Plaintiff requests the Court's permanent injunction be further modified to order that, "[a]t Plaintiff's request, the Pierce County Sheriff's Office [] assist in and/or oversee the removal" of any use of and materials reflecting the BOBCAT Marks. (Dkt. No. 23 at 15.) The Court requested additional briefing as to the Court's authority to compel the Pierce County Sheriff's Office to assist in enforcing an injunction issued by a federal court. (Dkt. No. 25 at 5.) Plaintiff's supplemental briefing cites 15 U.S.C. § 1118 and RCW 6.17.070 as that authority. (Dkt. No. 26 at 5–6.)

Section 1118 does provide that a Court may order the destruction of articles that violate the right of a trademark owner. However, Plaintiff has not shown how this section authorizes a federal court to order the Pierce County Sheriff's Office, in particular, to assist in carrying out any such destruction. (*Id.* at 5–7.) Indeed, a review of the cases cited by Plaintiff that discuss Section 1118 involve courts ordering that a Defendant itself—not a local authority—destroy the infringing materials. *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 518 n.1 (9th Cir. 1992); *Sigma Entertainments v. Alluring Deals, LLC*, 2017 WL 10439659, at *9 (C.D. Cal. Nov. 15, 2017); *Starbuzz Tobacco, Inc. v. Melnick*, 2015 WL 12656925, at *6 (C.D. Cal. July 31, 2015).

ORDER GRANTING IN PART PLAINTIFF'S MOTION TO STRIKE (DKT. NO. 30) AND MOTION FOR CONTEMPT, SANCTIONS, AND MODIFICATION OF PERMANENT INJUNCTION (DKT. NO. 23) - 9

1        Plainitiff's citations to RCW 6.17.070 are similarly unavailing, as that provision of state law discusses the execution of judgments "of a court of this state," not appearing to extend to federal courts. The surrounding sections of the statute reinforce this conclusion: RCW 6.17.110, for instance, states that any writ of execution "shall be issued in the name of the state of Washington." Plaintiff has not provided argument to suggest that these provisions may serve as authority for a federal district court, rather than a state court, to issue such a demand on the Pierce County Sheriff's Office.

       Finally, Plaintiff cites to cases for the proposition that "a writ of execution may be ordered in cases concerning intellectual property infringement and domain name disputes." (Dkt. No. 26 at 7.) But these cases were not in the context of an order that infringing materials be removed or destroyed; rather, they concerned sums of money owed to a party. *Xcentric Ventures, LLC v. Elizabeth Arden*, 2010 WL 5018386, at *2–3 (N.D. Cal. Dec. 3, 2010); *Office Depot, Inc. v. Zuccarini*, 621 F. Supp. 2d 773, 775 (N.D. Cal. Sept. 10, 2007). They therefore do not provide authority for this Court to compel the Pierce County Sheriff's Office to remove or destroy Defendants' infringing materials.

       Accordingly, the Court denies Plaintiff's request to modify the permanent injunction to the extent that the proposed modification compels the Pierce County Sheriff's Office to aid in enforcement.

### III    CONCLUSION

Having considered Plaintiff's motions, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS as follows:

1. Plaintiff's Motion to Strike (Dkt. No. 30) is GRANTED in part.

2. Defendants' Answer (Dkt. No. 28) is STRICKEN from the record.

3. Plaintiff's request for attorneys' fees incurred in connection with its Motion to Strike is DENIED.

4. Plaintiff's Motion for Contempt, Sanctions, and Modification of Permanent Injunction (Dkt. No. 23) is GRANTED in part, and Defendants are found in contempt.

5. If Defendants do not comply with the Court's July 29, 2022 Order within fourteen (14) days after the entry of this Order, Defendants SHALL pay to the Court fines of $500 for each day of continued non-compliance.

6. Plaintiff is instructed to submit any request for attorneys' fees and costs incurred in investigating and prosecuting Defendants' conduct, including detailed billing records, for the Court's review within fourteen (14) days from the date of this Order.

7. The Court's July 29, 2022 Order granting a permanent injunction in favor of Plaintiff shall be MODIFIED to add:

   a) Defendants, their officers, agents, representatives, employees, successors, and assigns, and all others in active concert or participation with them, must cause their domain name ("bobcatrentalco.com") to be transferred to Plaintiff and abstain from obtaining a new domain name that

uses any BOBCAT Mark or any use of any word, term, name, symbol, or device (or combination thereof) that is identical or confusingly similar to, or a colorable imitation of, the BOBCAT Marks.

8. Where this Order requires a third party to act, the third party may, upon giving notice to Plaintiff's counsel, seek relief from the Order by filing a motion with this Court.

DATED this 18th day of September 2023.

David G. Estudillo
United States District Judge